UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY D. MOSELEY,

        Petitioner,

v.                                             Case No. 15-CV-0035

PAUL S. KEMPER,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR § 2254 RELIEF

Petitioner Timothy D. Moseley seeks federal relief from his state court criminal conviction pursuant to 28 U.S.C. § 2254. He claims that his state court conviction and sentence were imposed in violation of the Constitution. For the reasons that follow, Moseley's petition will be denied.

Moseley was charged in Milwaukee County with two counts of false imprisonment and one count of capturing an image of nudity without consent of a woman with the initials M.K. He was later charged in a separate case with eight counts of possession of a recording of nudity without consent of a woman with the initials T.H. The cases were consolidated for trial and a Milwaukee county jury convicted Moseley of all three counts involving M.K. and three of the eight involving T.H. The trial court imposed a bifurcated sentence of twelve years, the first eight in confinement. *See State v. Moseley*, Nos. 2011AP891-CR & 2011AP892-CR, 2012 WL 1499823 (Wis. Ct. App. May 1, 2012). Moseley is currently incarcerated at Racine Correctional Institution.

In his petition for relief under § 2254, Moseley asserts three claims. First, he alleges that the trial court erred in failing to conduct an *in camera* review of T.H.'s counseling records. Second,

Moseley alleges that the trial court erred in denying his motion to suppress evidence. Third, he alleges that the trial court exhibited bias toward him and, therefore, denied him his right to a fair trial. This Court has jurisdiction over Moseley's petition pursuant to 28 U.S.C. §§ 1331 and 2254.

## BACKGROUND

On October 7, 2009, City of Milwaukee police officers arrested Moseley, a United States Deputy Marshal, based on allegations of domestic violence against a woman named M.K. While in custody, Moseley consented in writing to a search of his apartment and South Milwaukee police officers seized numerous items from Moseley's apartment, including his computer, camera, external hard drive and CDs. A search of the computer revealed sexually explicit images of M.K and T.H. that formed the basis of most of the charges against him.

Moseley moved to suppress the images in question, arguing that he verbally limited his consent to the search for evidence relating to M.K.'s domestic abuse accusations. Moseley also moved for an *in camera* inspection of T.H.'s counseling records for evidence that she experienced memory lapses, had spoken to her therapist about Moseley allegedly sexually abusing her, and suffered from a psychological disorder at the time he recorded the images of her. The state had received T.H.'s records from the Cheyenne, Wyoming Police Department, which had received a copy from T.H.'s doctor. Wisconsin contended that Moseley had taken the pictures of T.H. in Wyoming and Cheyenne Police officers had interviewed T.H. to determine whether Moseley had committed a crime in Wyoming. During the interview, T.H. told the officers that she could not remember everything Moseley had done to her, but that she had spoken with her therapist about the acts and authorized the police to obtain her counseling records. Moseley alleged that the records would show that T.H. had a consensual sexual relationship with him in addition to revealing her memory lapses

2

and mental illness. Charges against Moseley in Wyoming were dismissed at the preliminary hearing stage.

The circuit court held a hearing on the motions to suppress at which South Milwaukee police officers testified that Moseley, after a phone conversation with a lawyer, signed a consent form for the search of his apartment without oral or written limitations on the scope of the search. Though Moseley agrees he signed the consent form, he testifies that he verbally limited the search to his bedroom and for the items related to the domestic abuse charge. During the hearing Moseley also testified that he signed the form because he was under the impression that his interview was being electronically recorded. In fact, however, no recording now exists of the relevant part of Moseley's interview with the police.

The trial court found the testimony of the officers more credible, that Moseley did not limit or withdraw his consent at any time, and that the lack of recording was the result of a technical error. Given those findings, the court held that the evidence was legally obtained from Moseley's apartment and denied the motion to suppress. The trial court also denied the motion for an *in camera* review of T.H.'s counseling records, holding that Moseley did not need the counseling records to impeach T.H. about her memory lapses, that T.H.'s conversations about the alleged abuse were other acts unrelated to the charges of possessing the images of nudity, and that Moseley's assertion that the treatment records have impeachment value was speculative.

On direct appeal from his conviction Moseley argued that the trial court: (1) erroneously denied his motions to suppress evidence; (2) erroneously denied his motion to conduct an *in camera* review of T.H.'s counseling records; and (3) exhibited bias, thereby denying Moseley his right to a fair trial. The court of appeals rejected each argument and affirmed the circuit court's judgments of

3

conviction. As to the search, the court of appeals found that the evidence supported the trial court's findings that Moseley did not limit or withdraw his consent, that his decision to sign the consent form was not a result of police misconduct, and that the motion to suppress evidence was therefore properly denied. As to the counseling records, the court of appeals found that Moseley failed to satisfy the burden set forth in *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and *State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, for an *in camera* inspection. Specifically, Moseley failed to explain what the counseling records would have added to the demonstrated memory lapses that was not merely cumulative. Finally, the court of appeals held that Moseley did not overcome the presumption that the trial court was impartial.

Moseley next filed a petition for review in the Wisconsin Supreme Court. In his petition for review Moseley argued that the court of appeals erred in affirming the denial of his motion for *in camera* inspection and in affirming the trial court's denial of his motion to suppress, but did not assert his claim of trial court bias. The supreme court denied his petition.

## ANALYSIS

**A. Standard Of Review Under AEDPA**

Federal review of state criminal convictions is limited to claims that the petitioner's custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Moreover, federal review of state court convictions is "highly deferential." A federal court may grant a state prisoner's application for habeas corpus only when the state-court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the

4

evidence presented in the [s]tate court proceeding." § 2254(d)(2). This is, and was meant to be, a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Though AEDPA stops short of completely barring federal court relitigation of claims already rejected by state courts, it only "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id.* In order to obtain federal review of his federal claims, a state prisoner must first exhaust his state court remedies and provide the state courts a full and fair opportunity to correct any error. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

**B. *In Camera* Review of Medical Records**

*Pennsylvania v. Ritchie* established the constitutional standard for determining when due process entitles a criminal defendant to an *in camera* review and disclosure of otherwise privileged records. 480 U.S. 39 (1987). *Ritchie* confirmed that defendants are not constitutionally entitled to disclosure of privileged records just because they might contain relevant information. At the same time, the Court recognized that the strong public interest in protecting sensitive information such as the counseling or mental health records of complaining witnesses does not necessarily prevent disclosure in all circumstances. *Ritchie* held that the need to balance "the rights of the defendant in ensuring a fair trial and the needs of the State or the individual to keep those records private," could be met by an *in camera* review of the records by the trial court. *Id.* at 60; *Rizzo v. Smith*, 528 F.3d 501, 506 (7th Cir. 2008). If the trial court determines that the records contain material and exculpatory information, due process requires that the information be disclosed to the defense. *Ritchie*, 480 U.S. at 58–59.

5

However, *Ritchie* stopped short of holding that the mere possibility that the records contained exculpatory information was sufficient to require the trial court to search through the confidential records. The Court addressed the burden that a defendant must meet in order to obtain an *in camera* review of privileged records in a footnote:

> The Commonwealth also argues that Ritchie is not entitled to disclosure because he did not make a particularized showing of what information he was seeking or how it would be material. See Brief for Petitioner 18 (quoting *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense ... does not establish 'materiality' in the constitutional sense")). Ritchie, of course, may not require the trial court to search through the CYS file without first establishing that it contains material evidence. *See United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Although the obligation to disclose exculpatory material does not depend on the presence of a specific request, we note that the degree of specificity of Ritchie's request may have bearing on the trial court's assessment on remand of the materiality of the nondisclosure. *See United States v. Bagley*, 473 U.S. 667, 682–83, 105 S.Ct. 3375 3383–84, 87 L.Ed.2d 481 (1985) (opinion of BLACKMUN, J.).

*Ritchie*, 480 U.S. at 58 n.15.

The Seventh Circuit has read this footnote as clearly establishing the standard for when an *in camera* review of confidential records by the trial court is constitutionally required: the defendant must make a "plausible showing" that the evidence he sought would be material and helpful to the defense. *Dietrich v. Smith*, 701 F.3d 1192, 1196 (7th Cir. 2012); *Davis v. Litscher*, 290 F.3d 943, 945 (7th Cir.2002). In other words, the plausible showing required is both that the information is material and that it would be helpful to the defense. *United States v. Jumah*, 599 F.3d 799, 810 n.6 (7th Cir. 2010) ("A defendant must at least make some plausible showing that the withheld material is both material and favorable to his defense." (internal quotations omitted)).

6

The Wisconsin Court of Appeals applied *Ritchie* in the case of *State v. Shiffra*, noting that *Ritchie* had been unequivocally adopted as the law in Wisconsin. 175 Wis. 2d 600, 607, 499 N.W.2d 719, 722 (Ct. App. 1993). *Shiffra*, however, applied a more liberal standard than *Ritchie* for determining when an *in camera* review by the trial court was required. *Schiffra* held that the trial court was required to conduct an *in camera* review whenever the defendant made a preliminary showing "that the sought-after evidence is relevant and *may be helpful to the defense* or is necessary to a fair determination of guilt or innocence." 175 Wis. 2d at 608 (italics added). In *State v. Green*, the Wisconsin Supreme Court held that *Shiffra*'s "may be helpful to the defense" standard was too low for requiring *in camera* review, given the strong public policy in favor of confidentiality of mental health records: "In light of the strong public policy favoring protection of the counseling records, however, we conclude that a slightly higher standard is required before the court must conduct an *in camera* review of privileged counseling records. For this reason, we conclude, consistent with other state standards, that a defendant must show a 'reasonable likelihood' that the records will be necessary to a determination of guilt or innocence." 2002 WI 68, ¶ 32, 253 Wis. 2d 356, 379, 646 N.W.2d 298, 309; *see also State v. Robertson*, 2003 WI App 84, ¶ 14, 263 Wis. 2d 349, 358, 661 N.W.2d 105, 109 ("*Green* instructs that a defendant must set forth a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information that is necessary to a determination of guilt or innocence and that is not merely cumulative to other evidence available to the defendant.").

In this case, the Wisconsin Court of Appeals cited both *Green* and *Shiffra* in rejecting Moseley's argument that he was entitled to an *in camera* review of T.H.'s counseling records:

7

> We conclude that Moseley did not meet the burden required for an *in camera* inspection. Under *Shiffra* and *Green*, Moseley was required to establish a specific factual basis demonstrating a reasonable likelihood that information in T.H.'s counseling records would be relevant to a determination of his guilt or innocence. *See Green*, 253 Wis.2d 356, ¶ 34, 646 N.W.2d 298. T.H. demonstrated to the jury herself that perhaps she did suffer from memory lapses by answering many questions with "I don't recall." What the counseling records would have added to the demonstrated memory lapses, that was not merely cumulative, Moseley does not explain. Moseley has not shown that additional evidence of memory lapses—which he alleged would be found in the counseling records—was anything more than cumulative of what was demonstrated clearly to the jury during T.H.'s testimony.

*State v. Moseley*, 2012 WI App 73, ¶ 24, 342 Wis. 2d 249, 816 N.W.2d 351. The court went on to affirm the trial court's determination that the "mere assertion . . . that . . . sexual assault was discussed during counseling and that the counseling records may contain statements that are inconsistent with other reports is insufficient to compel an *in camera* review." *Id.* at ¶ 25.

Moseley argues that the state courts erred in at least three ways in deciding not to perform an *in camera* review of T.H.'s records. First, Moseley argues that he met the burden as required by *Ritchie* and to the extent his request was speculative, all such requests would necessarily be speculative. Second, he argues that the Wisconsin courts here and elsewhere have been misapplying *Ritchie* using a "specific factual basis" standard, rather than *Ritchie*'s "plausible showing" standard. Third, Moseley argues that an *in camera* review is not actually required here because the records were not privileged and that the materials should have been turned over by the government pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

Moseley's argument has a certain logic to it. His claim, it should be noted, was not that he was entitled to have T.H.'s counseling records turned over to him; his claim was simply that the trial court should have conducted an *in camera* review to determine whether the records contained any exculpatory information. Of course, Moseley did not know at the time of his request whether T.H.'s

8

counseling records actually contained information favorable to his defense or not. That was why he asked the trial court to conduct an *in camera* review. To require the defendant to show that the confidential records contain material information helpful to the defense in order to be granted *in camera* review arguably conflates the question of whether an *in camera* review should be granted with the question of whether anything should be turned over to the defense. Thus, the initial burden the defense must meet to obtain an *in camera* review cannot be the same as the standard for requiring disclosure.

In order to prevail, however, Moseley must show that the Wisconsin court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." § 2254(d)(2). Moseley has failed to make such a showing. While it may have been more prudent to grant Moseley's motion and conduct the *in camera* review he requested, *Davis v. Litscher*, 290 F.3d 943, 948 (7th Cir. 2002), I am unable to conclude that the state courts' resolution of the issue constitutes an unreasonable application of federal law. As the court of appeals concluded, Moseley failed to explain why there was any reason to believe the records would contain any information that would be favorable to the defense.

With respect to the charges involving T.H., it should be noted, the issue was whether T.H. consented to Moseley's taking nude photographs of her. Moseley stipulated that he had taken many pornographic photographs of both M.K. and T.H.; his entire defense was that they had consented to his doing so. As to T.H., the evidence showed that he had numerous sexual encounters with her

9

over a six-year period. ECF No. 10-14 at 76:13–15. T.H. insisted that she did not consent to the sexual encounters but testified she never reported them because she feared for herself and her family because of Moseley's position as the Chief Deputy in the Cheyenne office where she worked. (*Id.* at 90:5–25.) At the pretrial hearing on his motion for an in camera review, Moseley's attorney claimed that T.H. told Cheyenne police that she remembered only three of the sexual encounters with Moseley, but said "she wrote the stuff down about these incidences [sic] for her therapist and has now forgot them." ECF No. 10-9 at 15:12–15. Counsel then asked: "What happens if she says, "I'm having an affair with Timothy Moseley in those records?' So, it's not speculative. I'm just asking someone to tell me yes or no to that." (Id. at 16:10–13.)

Implicit in counsel's argument, however, is his admission that he had no idea what T.H.'s counseling records might say about the key issues in the case. As a result, he made no showing that the information contained therein would be favorable to the defense. All he offered was a mere possibility of favorable information, but as the court of appeals correctly noted, an assertion that records might contain a statement conflicting with other reports is not sufficient to justify *in camera* review. *See Green*, 2002 WI 68 at ¶ 37; *Ritchie*, 480 U.S. at 53; *Rizzo*, 528 F.3d at 506.

In truth, it is difficult to imagine what information in T.H.'s records could have added to Moseley's defense. Regardless of what T.H. may have told her therapist, counsel was able to establish through his cross-examination of T.H., his direct examination of Moseley, and the videos and photographs Moseley had taken at the time that there had been numerous sexual encounters between them throughout the time they were working together in the Cheyenne Marshal's office. Based upon this evidence, counsel was able to argue to the jury that T.H.'s testimony that her six-year affair with Moseley was non-consensual, that she could recall only three of their many sexual

10

encounters, and that she did not consent to being photographed while nude was not credible. Counsel never explained to the trial court what information the therapy records might contain that would have strengthened his client's defense. He failed to explain why, given the photographs and videos he had of their numerous encounters, he needed T.H's therapy records to further challenge her credibility. As respondent correctly notes, cumulative evidence is not material. *United States v. Bailey*, 510 F.3d 726, 736 (7th Cir. 2007) (citing *United States v. Kozinski*, 16 F.3d 795, 819 (7th Cir. 1994)).

Moseley also argues that the Wisconsin courts applied an incorrect constitutional standard because they relied on *Green*'s "specific factual basis" standard instead of the *Ritchie* "plausible showing" standard. *See Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent."). Moseley is correct that the Wisconsin courts and the Supreme Court have, at times, used slightly different language in approaching this issue. It may be that in some cases, the Wisconsin courts' requirement of a "specific factual basis," instead of a "plausible showing," that the privileged records contain information that is both material and favorable to the defense will yield a different result. But in this case, Moseley made no showing at all that the records contained such information. His entire argument was that they might contain exculpatory evidence. Under *Ritchie*, this is clearly not enough.

Moseley alternatively argues that this is a *Brady*-type case because the State prosecutor possessed the records when he requested them, but this argument also fails. Indeed, because the State prosecutor had possession of the records, she had an independent duty under *Brady* to turn

11

over to Moseley or his attorney any exculpatory evidence contained therein. Unless the prosecutor violated her obligation under *Brady*, implicit in the fact that she opposed Moseley's request is the determination that the records did not contain any exculpatory information. Thus, the very review Moseley requested the trial court to conduct was already performed by the prosecutor. While Moseley may have preferred the trial court to conduct the review, that is generally not the court's responsibility. "In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland*, . . . it is the State that decides which information must be disclosed." *Ritchie*, 480 U.S. at 59. To the extent *Brady* applies here, it provided Moseley essentially the same protection as *Ritchie*. In any event, Moseley has failed to show a due process violation under either case.

Moseley's remaining arguments also fail. Moseley argues that *Ritchie* does not apply because T.H.'s records are public records and so are not privileged. In fact, he suggests he has obtained a copy of them through an open records request to the Cheyenne police department and contends that they in fact contain evidence that would have changed the outcome of his case if it had been provided before trial. The fact that Moseley might have been able to obtain a copy of T.H.'s therapy records directly from the Cheyenne police department does not mean they were not privileged. It is the character of the records that determines whether they are privileged, not how they are obtained. And if in fact the records do contain exculpatory evidence, as Moseley contends, his remedy at this point is to seek a new trial in state court based on newly discovered evidence or prosecutorial misconduct. No such claim is properly before this court, however, and thus I decline to address it.

Finally, Moseley argues that T.H.'s testimony that she suffered from PTSD at trial opened the door to consideration of her counseling records. But the trial court struck T.H.'s testimony regarding her alleged PTSD and this Court presumes that the jury followed a court's instruction. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008). Any other arguments that were brought by Moseley regarding T.H.'s records are also unavailing.

**C. Motion to Suppress**

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 482 (1976) (footnote omitted). As the Seventh Circuit has observed, *Stone* requires that both state and federal courts must apply the exclusionary rule at trial and on direct appeal, but "it is inappropriate to use the exclusionary rule as the basis of collateral relief because it would not appreciably augment the deterrence of improper police conduct." *Hampton v. Wyant*, 296 F.3d 560, 562 (7th Cir. 2002). The Seventh Circuit further explained:

> It is therefore not possible to move from a conclusion that seizure of evidence violated the fourth amendment to a holding that a writ of habeas corpus must issue. The exclusionary rule is not enforced on collateral attack. Put otherwise, a person imprisoned following a trial that relies, in part, on unlawfully seized evidence is not "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The seizure may have violated the Constitution, but the custody does not, because the exclusionary rule is a social device for deterring official wrongdoing, not a personal right of defendants.

*Id*. at 562–63.

Given the holding of *Stone*, this Court cannot consider the merits of Moseley's Fourth Amendment claim if he received a full and fair opportunity to litigate that claim in the Wisconsin courts. The Seventh Circuit has stated that "a 'full and fair opportunity' guarantees only 'the right to present one's case,'" *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (citations omitted), which

> simply refers to the right to have a judge listen to and consider the evidence a party actually presents at trial. It is the right to have a judge who has not closed his mind to the issues, is not bribed or sleepwalking, and is not "in some other obvious way subvert[ing] the hearing."

*Brock v. United States*, 573 F.3d 497, 501 (7th Cir. 2009) (quoting *Cabrera v. Hinsley*, 324 F.3d 527, 530–31 (7th Cir. 2003)).

Here, the exhibits filed with this Court demonstrate that Moseley was provided a full and fair opportunity to litigate his claim that the seizure of the computer, camera, DVDs and other items violated the Fourth Amendment. Moseley filed motions before the trial court, and also argued that the evidence seized from the searches should have been suppressed on direct appeal. The Wisconsin Court of Appeals considered the issue, but did not find in Moseley's favor. Moseley then petitioned the Wisconsin Supreme Court for review and the petition was denied. There is no indication that the Wisconsin courts "were careless of [Moseley's] right to present his claim," *Cabrera*, 324 F.3d at 532, or that the hearing process was subverted in any way. Because it appears that Moseley received a full and fair opportunity in the state courts to litigate his claim that the seizure was unlawful, this Court is foreclosed under *Stone* from entertaining Moseley's Fourth Amendment claim.

14

**D. Judicial Bias**

Moseley's final claim is that the trial court exhibited bias toward him and denied him his right to a fair trial. Moseley admits procedurally defaulting on this claim by not presenting it to the Wisconsin Supreme Court. Pet'r's Br. in Reply 21, ECF No. 24. A federal court may not grant a petition for a writ of habeas corpus unless a state prisoner first exhausts his state court remedies and provides the state courts a full and fair opportunity to correct any error. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However, a claim is not defaulted where a petitioner can "demonstrate either cause for the default and prejudice or that ignoring the default is necessary to prevent a fundamental miscarriage of justice." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). A fundamental miscarriage of justice has occurred when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The Supreme Court has noted the difficult hurdles that attend alleging actual innocence:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). Furthermore, this evidence must show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

Moseley claims to have come forward with new evidence that shows "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Specifically, Moseley claims (in his reply brief) to have the following new reliable evidence in his possession:

15

1. T.H. was abusing the pyschotropic [sic] prescription medication, Effexor. T.H. was taking approximately 900mg of Effexor daily. This is three times the legal maximum dose of 300mg. At this dosage Effoxor is know [sic] to produce Hallucinations.

2. T.H. was diagnosed with a psychosis that causes her mind to implant "False" memories.

3. T.H. accused her first husband, Mark Housley of sexual assault. The Gillete Wyoming Police Department did an investigation and found this accusation to be False.

4. T.H. accused her then boyfriend, and now current second husband, Jay R. Smith, of sexual assault. The Laramie County, Wyoming Sheriff's Office did an investigation and found this accusation to be false.

5. T.H. provided her counselors with a synopsis of the "forced" sexual encounters she believed she had with the Petitioner. This synopsis did NOT contain any incident remotely similar to the sexual encounter that was depicted by photographes [sic] and the subject of the criminal charges against Petitioner in Milwaukee County, Wisconsin and Laramie County, Wyoming. Detective Bonee Bristow, Cheyenne Police Department, wrote on the synopsis in T.H.'s records, "this statement is different than the statement T.H. provided to the P.D."

6. T.H. was diagnosed with Post-Traumatic Stress Disorder brought on by years of sexual abuse by her biological father.

7. T.H. accused Petitioner of sexual assault. The Cheyenne, Wyoming Police Department did an investigation and all charges were dismissed during the Preliminary Hearing in the Laramie County Wyoming Circuit Court.

Pet'r's Br. in Reply 21–22, ECF No. 24. Moseley states that none of this evidence was presented at trial. He argues that he has exceeded the standards to overcome procedural default as outlined in *Murray v. Carrier*.

At the outset, Petitioner's claim for actual innocence fails because he has not provided any actual *evidence* in support of his innocence. It is a fundamental rule of litigation that unsupported statements in a brief are not evidence and cannot be given any weight. *See Matter of Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985); *United States v. Stevens*, 500 F.3d 625, 628 (7th

Cir. 2007). Here, Moseley offers only his unsupported statement that he has evidence in his possession which proves the propositions listed above. Such claims are clearly insufficient.

Additionally, even if this Court took Moseley at his word that he had such evidence or held an evidentiary hearing to collect said evidence, the evidence he claims to have would be insufficient. Although the court may consider credibility assessments at this stage (including an assessment of the government's case), the petitioner must present overwhelming evidence of innocence. *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010), *as amended on denial of reh'g and reh'g en banc* (Feb. 7, 2011). "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). None of Moseley's evidence comes close to "demonstrating innocence so convincingly that no reasonable jury could convict." He has no hard physical evidence proving his innocence or other convincing evidence proving T.H. provided false testimony to the trial court. Moseley's evidence only makes a collateral assault on T.H.'s credibility. Though her testimony was critical (if not essential) to Moseley's conviction, the evidence set forth by Moseley does not prove that she was lying on this occasion. No matter how incredible the witness is based on conduct in other circumstances, a jury is free to believe that the witness is telling them the truth regarding the case at hand. Therefore, Moseley has failed to present evidence necessary to show that a reasonable jury could not have convicted him here.

Finally, even if Moseley's default was excused and he was given a "gateway" to make his judicial bias challenge, I would affirm the decision of the court of appeals. *Morales v. Johnson*, 659

17

F.3d 588, 606 (7th Cir. 2011). Moseley argues that the trial court's comments (both in and outside the presence of the jury) exhibited bias, implied that defense counsel was victimizing TH, and implied that T.H.'s testimony was credible. In essence, the allegedly biased comments consisted of the trial court suggesting that counsel conduct his cross-examination of T.H. concerning the pornographic videos Moseley had taken of her in a "humane way" and interfered in counsel's attempt to question T.H. as to whether the sex depicted in the video was consensual. The court of appeals found that Moseley had not overcome the presumption that the trial court was impartial. As an initial matter, the court of appeals noted that the trial court made a binding subjective determination that it was not biased. The court of appeals next noted that the trial court's process in managing difficult questions did not exhibit objective bias, but were rather a response to aggressive questioning from defense counsel. The court of appeals then analyzed each of the allegedly biased comments and found that they did not exhibit trial court bias or, to the extent that they did, the comments were *de minimis* and any potential prejudice cured by the cautionary instruction the court gave. The decision of the court of appeals was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

Accordingly, and for the reasons set forth above, Moseley's petition for relief under 28 U.S.C. § 2254 is **DENIED** and this action is **DISMISSED**. The Clerk is directed to enter judgment forthwith. Though I have concluded that Petitioner is not entitled to relief on any claim, I do find that he has made a substantial showing of the violation of a constitutional right such that further review should be allowed on one of his claims. A certificate of appealability shall issue on his claim

18

that his right to due process was violated by the trial court's failure to conduct an *in camera* review of T.H.'s counseling records.

**NOTICE:** The judgment to be entered pursuant to this order is final. A dissatisfied party may appeal this Court's judgment to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

Dated this   10th   day of May, 2016.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court